May it please the court, my name is Stephen Potts and I have been substituted as counsel in this case for Mr. Jeff Foster who wrote the briefs and who unfortunately passed away. I would like to begin with the sentencing argument and when Ms. Tadios was sentenced the court added four points because this crime according to the court involved more than $10,000 and the way that the court got, I should back up, this case primarily involved expenses that were either charged on a credit card or paid by the government and the government's contention was that the defendant had used that money essentially to visit her husband on personal business. The way that the court got to over $10,000 though was by adding a value in for the value of her time that I think essentially they figured out an hourly rate for her time and the amount of time that she spent visiting her husband at $55 an hour approximately. She otherwise as I understand the record was required to submit some sort of time records in other words if she took sick leave or personal vacation she was supposed to fill out a leave slip? Yeah that's my understanding from the record. And the evidence was that she didn't do that for the time that she spent visiting her husband she treated it as if it was all part and parcel of her business travel. Yeah she didn't treat it as annual leave in any event. I think the argument you made was that the government didn't lose anything because she's entitled to her salary. She would be paid either way. Of course she would be paid but if you take any typical government worker who has fixed leave and they accumulate more if they don't take it and that means that even though they get paid they don't have to show up in other words the government doesn't get their services that day. Well if she hasn't accounted for the days where she's supposed to show up because she just took an unaccounted for vacation isn't that a loss of services to the government? Well the problem with that is that everyone's assuming that her employer does things the same way that I think that the federal government does. And I think it's complete speculation from what I can tell. Is there anything in the record that tells us for example whether you're paid for unused vacation time when you separate from service? I do not think there is and I would refer the court to the government supplemental excerpt of record page 338. If I could just quote one sentence it was the prosecutor saying quote I don't have the testimony or the law or anything like that to say you know she's going to get her annual leave but I think the court can apply its own common sense and say that an employee whether he accrues when he or she accrues annual leave is entitled to be compensated for that annual leave when they terminate services. End quote. So it's just a guess. So well let's take what we do know and then we need to figure out is that enough? Okay. So we do know that she's supposed to turn in a leave slip correct? I think as I understood it was some kind of time sheet. Time sheet right but we also know from the credit card situation that if she's going to be visiting her husband or whatever she's supposed to advise that she's taking leave not that she's just having a day where she goes and visits him. So isn't that in the record that she's supposed to advise if she's taking leave? I think she's supposed to put something to the effect of leave on her time sheet. Okay so if she's supposed to put leave on her time sheet we do know that. Do we also know that she could if she had extra leave days ultimately cash that in? Is that in the record? No I do not believe so. Okay. Counselor I'm a little bit confused on your $10,000 argument. I have a note here that the travel funds totaled $11,248.79. I don't think it was that high. I didn't just pull it out of the air. Okay. It came out of the record somewhere. I mean the $10,000 as I understand it is the federal jurisdictional amount for the federal funding supplied to the tribe and there was evidence that the tribe got $14 million a year from the United States so I think we're over $10,000 are we not? No I think the total including the time and the expenses was well I go to page 9 of the government's brief. Well it's not helpful to cite to briefs when I'm looking for evidence. I rarely find evidence in briefs. Well what my understanding is that the total travel expenses were approximately they were approximately they were slightly less than $10,000. Okay well maybe Mr. Rostad can point us to how the district court arrived or where that $11,000 number comes from. You don't think the fact you don't think her time sheet which are like exhibit 17, 18, 19 you don't think that that shows anything with respect to the way her time away from government service was accounted for? No I don't think it I mean we don't know how it was accounted for once she submitted the time sheet there's I don't think there's any evidence. As I understand the record. What about the can the district court factor into the loss consideration in essence theft of government services in other words she was paid for time that she was actually on personal time when she was supposed to be on the employer's business. Could the district court properly include that time as monetary harm to the employer? Well I don't think so because it's my understanding again that she was if she did any work in a particular week she was entitled to be paid. So even if she only worked an hour? Is that your position? Yes. Well that doesn't make sense because I thought her testimony acknowledged that she was that she was supposed to put in these time leave slips correct? There was testimony to that. Right so that that testimony is in the record. And it seems that the defense's argument rests on the fact that well no harm no foul because she's going to get paid anyway but that doesn't account for why individuals put in records for taking leave. Otherwise you could argue there'd be no prosecution on that at all because she could basically visit her husband 100% of the time and not work at all and it wouldn't matter because she'd get paid anyway therefore no loss to the government. I mean that's the extension of your argument isn't it? No because there's all these expenses that the government alleged that you know she she had hotel rooms and I think other travel expenses that were either charged to the government or or paid to her directly. Counsel can you help me? I'm sorry did you finish your answer? Well I was going to say regardless of the time the government contended that there was there was theft. Well can you help me then understand why I shouldn't apply the Second Circuit's decision in United States versus Burns that was the case involving the the person who was being paid to do work but he instead went off to Harvard and rented an apartment and basically spent most of his time studying as opposed to doing the work that he was being paid for. And the Second Circuit found that it was proper for the district court to compute in essence the theft of time in establishing the amount of the loss. Why doesn't that meet the common sense rule here? You know I'm not as familiar with that case as perhaps I should be but I don't know how that employee was paid. I think that case was cited to the attention of the sentencing judge was it not? I know it's in the government's brief. Okay I don't know I don't know how Burns was paid. It's a very I I see I read it as very factually similar to what Ms. Taddeos was convicted of. Okay well I think your point and we'll follow up with the government is that you don't think well there's two issues one would her expenses alone get her over the ten thousand in which case this would kind of be icing on the cake but if they wouldn't get her over the ten thousand your point is that you don't think there's enough evidence in the record beyond the timesheets to show what the system was. Is that correct? Yes. Okay. I take your point. It ended at the timesheets. And the district court departed downward did it not below the sentencing guide? It did yes. So as a practical matter even if you've gotten the two points off the guideline range still would have been higher than what you actually got right? Well this is four points and- I thought it was two is it four? It was four for this there were two other issues involving two points. Yeah the abuse of trust and yeah. Yes so I know I think it would still it would- It would still be below guideline ten so- Well I think it went down the guidelines would be six to ten months is what I recall. Okay. And she got a year in a day. Twelve months. Yes. Which with credit for time off gives her almost ten months actual custody assuming she keeps her nose clean right? Yes. Fifty four days a year. Yes. Yeah. So if he'd given her ten months she wouldn't have got any good time credits but if she got a year and a day so it's still pretty close. And I suspect that that's why the judge gave her twelve months. He was giving her a break. Yeah. Not only a guideline break but also a calculation break correct? Right. I can't say he's a bad guy he's- Nobody's suggesting he's a bad guy but you have total right to see if there's any other leeway in the sentencing which is your argument. So there's we don't at all dispute that. Okay. And I see I'm down to three minutes I'd like to reserve the rest of my time. You may. Thank you. Good morning. Good morning. May it please the court I'm Carl Rosted from the District of Montana. I first want to thank the court for accommodating our flight schedule. Sure. Happy to do that. As Judge Gleason knows getting from Seattle to some of these outlying areas is you know- We understand. We've flown to great lengths. We go there as well. Yeah. We've gone backwards. We understand the problem. Well anyway- You'll be well out of here to catch your plane. It's greatly appreciated. I want to address first of all Judge Tallman's point when you're talking about the four points I think what Mr. Potts is eclipsing is that it would be two points if it's over 5,000. So it's not like you would get zero points for loss. So it is two points. It is two points. That we're quibbling about. Yes. So that would result in a guideline range that would still be- Higher than what the judge parted down. So your argument is no harm no foul. That's certainly one of them. Okay. But I don't believe there was any harm. Right. But the- Can you help me on the great mystery surrounding the 11,000? Certainly. Certainly Judge. If you'll- In my brief I have a graph that cites to the record a supplemental excerpt of record. And I believe that if you take out the- pay the salary entirely you may be just a bit below the 10,000. Okay. About 9,000. I mean within $100 it's possible to get there. But that was giving her all sorts of credit for anything that could even have been arguable. The agent backed out anything that would even be- for example any of the travel to New Orleans for the conference. All that was backed out because- except for the days that she spent visiting her husband at Yankton. So I thought we were being relatively generous with the defendant. But we still insist on our position that the fact that she did receive annual leave, was required to take annual leave, it does have value. As I believe Judge McKeown was alluding to. The- when the government, any government, tribal government, federal government, pays for an employee's services that has value. And the exhibits that were introduced at sentencing were the timesheets that are attached to our sentencing memo. I'm afraid I couldn't pull up my supplemental excerpt of record to say what those attachments are. But they're in the record. Which indicate clearly that she would always put down eight hours of travel when she went to visit her husband. And there was a place for annual leave. And in fact on some of the documents she donated annual leave. Which means that it has value. She was giving other people the ability not to show up to work and be compensated for their time. I mean the argument I think was made is, yes she turned in timesheets. But then basically the judge or you or us or anyone else is speculating what does that mean. Because we don't have in front of us any real description of what does accumulated time mean. What does leave mean. So I think that's the argument. Evidence isn't there. And I agree, Your Honor, I would have to say that it's circumstantial. That if you have timesheets that indicate that you have annual leave. And you've got it and you're giving it away. Then it has value of some kind. That even above and beyond the very basic principle. That governments pay their employees to work, not to travel. And it was an issue that was entirely rejected by the jury. Because they tried to bring it out in defense. That because she was of the nature of her position. Just as you said, she could work one day a week. And as long as she worked one day, that was enough. She's entitled to her whole salary. Well let me ask you this. Because she's an exempt employee, she works extra hours. She doesn't get any money, right? That's true. So the calculation of $55.09 per hour that she's paid. Assumes how many hours per week? 80 hour week. I'm sorry, 80 hour pay period. That would be a lot. We expect a lot of travel employees. 40 hour week, 80 hour pay period. But then if she works 60 hours, she still gets paid for quote 40 hours. That's correct. So if she takes an extra day off, there's no, at the $55 an hour. Even if you were to discount that sum, you might come up with a different number. You could, your honor. But I would assert to the court that there would have to be a process for that. Someone would have to say, jeez Vaughn, you worked all weekend. Why don't you take a couple of admin days off? And that would have to be reflected in the record somewhere. Otherwise you're just speculating that she ever worked more than 40 hours. Well I'm just saying that the absolute number of $55 an hour assumes just a 40 hour work week. A basic pay rate. A basic pay rate. Yes ma'am. And the question is whether that assumption, which is not really based on any evidence in the record in terms of how the system works. Whether that is sufficient to sustain the sentencing calculation. You're right, your honor. Other than just like again, we get back to the common sense of it. You take a salary, you divide up the number of work hours in a work year. And that's your hourly rate. Could I switch you gears totally and hear your thoughts on the issue on the jury instruction on the defense theory of the case and the adequacy of that instruction in light of the intent to defraud versus defendant's action in honest intention. I was concerned as to whether your perspective as to, I'd like to hear your thoughts on that. Your honor, our position was that the requirement that we prove an intent to defraud was sufficiently antithetical to a good faith defense that she fully explored during the trial. That the jury could not have found an intent to defraud if there had been good faith. Certainly you can add a good faith instruction, and some courts do. But I think Judge Morris was correct when he said that they adequately cover it because the level of our proof responsibility completely eclipses any good faith argument. And certainly she was fully free to argue it. It wasn't like there was any inhibition of the argument. It's just that the jury was not given some special instruction that said if you find good faith. But I think Judge Morris just felt that that was unnecessary in the face of what the jury was being told the government had to prove. One of the other issues that I like to explore is her argument that once these funds were turned over to the tribe that there was a certain amount of discretion in terms of how they used them and the sort of notice to the board of what she was doing and permission. So therefore this internal oversight really can supersede what might be viewed as a normal or traditional scrutiny of government funds. Your Honor, I think that would have some resonance had it not been the fact that the paperwork was falsified. Had it been on there that the reason I'm taking this is to go visit my husband in prison and when they sign off on proof or as approved that they're signing off saying I'm going to go visit Jake down in Yankton and that's not a business related enterprise. Then I think that you might have some salience in saying well it was approved even though it was improper and it should not have been approved, they approved it. But to the extent that she falsified the paperwork to include site visits to suggest that the reason she was going to prison was to enhance her job description by looking at other IHS or medical clinics, I think that's where that argument would fail. I guess they did have a system where you could set up deductions that would be taken out, travel deductions, and she didn't do that. Yes. She didn't follow through on those. There was a number of what we might consider odd. For example, the payback and the withdrawal for other travel, that was a big issue that she was paying it back. But we established at trial and certainly at sentencing that what that was, she was making payments back for previous trips to Yankton. For example, if a travel employee needs to go to a conference in Missoula and they're going to be there for three days and they come back after only two and they only have two nights of hotel rather than three, well then they owe the tribe money back because none of the tribal employees generally go on their own diamond and get reimbursed, they get advances. And so the paying back or the withholding is to pay back money you've already received and it had nothing to do with the Yankton trips. If the court has no other questions, I'd be happy to turn it back over to Mr. Potts. Thank you. Thank you. Well, with regard to the sentencing then, I think there really isn't any evidence after the fact that she should have said leave on her time. We don't know what happened with the leave and we really don't know the value of time. I mean, no, she didn't claim any annual leave for time that the government proved she was actually engaged in personal activities to visit her husband when she falsely told the board she was actually visiting Indian health clinics in the region. Isn't that the problem here? Can you say that again? Yeah, sure. I mean, it seems to me the problem with your argument is it ignores the fact that she falsely claimed on the justification for the travel that she was actually visiting Indian health clinics in the vicinity of the Yankton federal prison camp when, in fact, she was visiting her husband. Well, that's true, but, I mean, to me that goes towards guilt. I mean, on the sentencing argument we're assuming she's guilty, but we're just calculating the sentence. Well, I thought there was testimony from two of the board members that we would never have approved the reimbursement for that travel had we known. That may be true, but, again, this is the salary. The district court then inferred from that that she was also, in essence, taking time that she should have submitted annual leave slips for so that the employer was harmed both by paying for travel expenses that had no obligation to pay and paying her for time when she was supposed to be working. And I go back to the theory of the Burns case, which I think supports the government's theory of prosecution here. Okay. There's still no showing of what the value of the time was, though. What's unreasonable about dividing the annual salary by 2,080 hours to come up with an hourly pay rate? If that's exactly what she works and if she gets a certain amount of leave that she's then entitled to. But we know she didn't. That's the problem. We know that she, in essence, charged her employer on company time for time when she was devoting to personal business. Well, let's just assume she could work 80 hours a week, as he said at one point when he meant really 40 hours a week. So it would be half that. It would still put her over the $10,000, wouldn't it? I mean, nobody would suggest we're going to assume she were compensated at half the rate, $25 an hour, because she did work an 80-hour week every week. You'd have to get pretty low in the hourly rate to not put her over the $10,000, at least according to the chart in the government's brief. Yes, unless she's not entitled to be compensated for the leave when she leaves the employment. Then the leave has no value. Well, the leave has value, doesn't it, in the sense that it permits her if you don't use up your leave, you can have another day off where you don't have to give service to the government. You can go play on your day off. That's an absence of service to the government, right? But all we can really do is speculate about whether that's the case or not. Okay. Thank you. Thank you. I think we have your point in mind. I'd like to thank both of you for your arguments this morning and wish you speedy and safe travel. Thank you. Back to Montana.
judges: McKeown, Tallman, Gleason